UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
**PEGGY A. HERRERA**,

                *Plaintiff*,               **MEMORANDUM AND ORDER**
                                                                19-CV-06583 (AMD) (VMS)
      -against-

**NAVIENT CORPORATIONS, et al.,**

                *Defendants*.
-------------------------------------------------------------------x
**ANN M. DONNELLY**, United States District Judge:

      On October 11, 2019, the *pro se* plaintiff filed her complaint in the Queens County Supreme Court (Index No: 717610/2019), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against defendants Navient Corporation ("Navient") and Navient Solutions, LLC ("NSL"). (ECF No. 1-2 at 5-6, "Complaint.") On November 21, 2019, the defendants removed the case to this Court, and on December 18, 2019, moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 1, 5.) The plaintiff opposes the motion and, in the alternative, requests leave to file an amended complaint. (ECF No. 9.) For the reasons that follow, I grant the defendants' motion to dismiss, and give the plaintiff leave to file an amended complaint.

## BACKGROUND[1]

      In 2010, Ted Okoroji applied for a student loan totaling approximately $214,280.42. (Compl. ¶¶ 3-4; ECF No. 9 ¶ 22.) Although the application bore the plaintiff's electronic

---

[1] The facts are taken from the complaint and the plaintiff's opposition to the motion. When a plaintiff proceeds *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). For purposes of this motion, I accept as true the factual allegations in the complaint and the opposition papers and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

signature, she contends that she was the victim of identity theft, that she "did not authorize or approve the use of her information for the purposes of the loan," and that the defendants did not verify her signature. (Compl. ¶¶ 3-4.) When the defendants could not contact or collect payments from Okoroji, they turned to the plaintiff for payments. (Compl. ¶ 3; ECF No. 9 ¶ 29.) She informed the defendants that she was the victim of identity theft, but they continued their collection efforts. (Compl. ¶¶ 3-4.)[2]

In a January 25, 2019 letter, the defendants advised the plaintiff that they could not confirm her allegations of identity theft, and then resumed their efforts to collect the debt from the plaintiff through "continuous communications and letters" (Compl. ¶ 4), including phone calls that "utilized one, or more, automated dialing systems." (ECF No. 9 ¶ 10.)

On or about June 3, 2019, the plaintiff authorized her brother, Victor Herrera, through a durable power of attorney, to act as her agent and to submit a cease and desist letter to the defendants on her behalf. (Compl. ¶ 5.)[3] The defendants responded to the cease and desist letter on September 18, 2019, again dismissing the plaintiff's claim of identity theft. (Compl. ¶ 6.) Although the defendants provided the plaintiff with a copy of the promissory note with her electronic signature, she asserts that the defendants "failed to deliver or demonstrate a valid authorized signature of the supposed promissory note" (Compl. ¶ 7), and that the defendants "cannot attribute the identity of the promissory note to the plaintiff." (ECF No. 9 ¶ 31.)

---

[2] While the plaintiff claims that she tried to report the identity theft to the defendants, she does not specify when she notified them or by what means. (ECF No. 9 ¶ 29.) She also claims that she sent a Fair Trade Commission complaint to the defendants (*id.*), but does not include documentation with the complaint.

[3] The plaintiff refers to the cease and desist letter in her complaint, but it was not attached to the complaint that the defendants filed with their notice of removal; the plaintiff did not include it or the defendant's response with her opposition papers. (*See* ECF Nos. 1, 9.)

The plaintiff contends that the defendants' "unlawful collection practices" have had a negative effect on her reputation, mental health, and credit score, and have caused her undue financial hardship by making it increasingly difficult for her to recover from her own mounting debts. (Compl. ¶¶ 3, 7; ECF No. 9 ¶ 23.) She seeks damages in the amount of $30,000. (Compl. ¶ 9.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Although detailed factual allegations are not required, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Because the plaintiff is proceeding *pro se*, the court holds her complaint "to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted), and interprets her pleadings liberally "to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003); *see also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Nevertheless, "a complaint's allegations

3

must . . . at least 'permit the court to infer more than the mere possibility of misconduct.'" *Richardson v. City of New York*, No. 17-CV-9447, 2019 WL 1512646, at *2 (S.D.N.Y. Apr. 8, 2019) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### I.  The FDCPA Claim

The defendants make three arguments for dismissal of the plaintiff's FDCPA claim: (1) that the complaint fails to differentiate between the defendants; (2) that neither NSL nor Navient are "debt collectors" under the FDCPA; and (3) that even if the FDCPA applied, the plaintiff fails to state a claim under the Act.

#### A.  Failure to Differentiate Between the Defendants NSL and Navient

The defendants contend that the FDCPA claim should be dismissed because the plaintiff does not differentiate between NSL and Navient, and instead refers to them collectively as the "defendant(s)." (ECF No. 5 at 9.) Federal Rule of Civil Procedure 8(a) requires that a complaint naming multiple defendants provide a factual basis to distinguish each defendant's conduct. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (upholding dismissal of a complaint "alleging a host of constitutional and state common law claims" where the complaint "failed to differentiate among the defendants, alleging instead violations by the 'defendants'"); *see also Elias v. City of New York*, No. 10-CV-5495, 2010 WL 5475809, at *3 (E.D.N.Y. Dec. 30, 2010) (same). Although a complaint's failure to differentiate among multiple defendants may constitute an independent ground for dismissal, it is not, in and of itself, sufficient reason for dismissal in this case. *See Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192, 2018 WL 4680023, at *3 (S.D.N.Y. Sept. 28, 2018), *reconsideration denied*, 2019 WL 4686529 (S.D.N.Y. Sept. 26, 2019); *see also Lopez v. BigCommerce Inc.*, No. 16-CV-8970, 2017 WL 3278932, at *2 (S.D.N.Y. Aug. 1, 2017) (finding that although the *pro se* plaintiff frequently

4

referred to the two "defendants" without distinguishing between them, she pleaded sufficient facts "to provide the opposing [parties] 'fair notice' of the claim to enable [the parties] to answer and prepare for trial").

However, the defendants' claim that the plaintiff fails to state a claim against Navient, the parent company of NSL, has merit. (ECF No. 5 at 10.) Although a corporate relationship between a parent company and its subsidiary may in some instances be sufficiently close to hold one company legally accountable for the other's actions, a corporate relationship alone is generally "not sufficient to bind a [parent corporation for the actions of its subsidiary]." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995)); *see also United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107, 2017 WL 4326523, at *11 (S.D.N.Y. Sept. 27, 2017) ("mere corporate proximity . . . is not enough" to justify piercing the corporate veil); *Kirschner v. CIHLP LLC*, No. 15-CV-8189, 2016 WL 5720782, at *4 (S.D.N.Y. Sept. 30, 2016) ("[A]llegations of ownership alone are not enough to establish a parent's involvement in activities of a subsidiary.").[4]

Because related corporations are afforded the "presumption of separateness," a plaintiff must demonstrate the parent company's actual domination over its subsidiary in order to pierce the corporate veil. *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 22 (2d Cir. 1976); *accord All. Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch.), *aff'd*, 976

---

[4] Because NSL and Navient are Delaware corporations (ECF No. 9 ¶ 8), the court applies Delaware law to determine whether Navient can be held liable for NSL's conduct. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). To pierce the corporate veil under Delaware law, the plaintiff must show "(1) that the business entity and its owner operated as a single economic entity and (2) that [there was] an overall element of injustice or unfairness." *Cohen v. Schroeder*, 248 F. Supp. 3d 511, 518 (S.D.N.Y. 2017), *aff'd*, 724 F. App'x 45 (2d Cir. 2018) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 174 (2d Cir. 2008)) (internal quotation marks omitted).

A.2d 170 (Del. 2009). The plaintiff asserts that "Navient Corporation consented to, has knowledge of, has materially participated in, and has controlled the activities of Navient Solutions . . . and all relevant Navient predecessor or subsidiary business entities." (ECF No. 9 ¶ 13.)[5] However, the plaintiff does not allege any facts to show that Navient exercised actual domination over NSL or that Navient itself engaged in any unlawful collection practices. *See De Jesus*, 87 F.3d at 70; *Atkins v. Apollo Real Estate Advisors, L.P.*, No. CV-05-4365, 2008 WL 1926684, at *9 (E.D.N.Y. Apr. 30, 2008) (dismissing the *pro se* plaintiffs' claims against parent corporations because the pleadings failed to allege that the parent corporations "dominated" other defendants or "acted on their own behalf to defraud plaintiffs"). As currently pleaded, the plaintiff's claim against Navient must be dismissed.

### B. The Defendants are not Debt Collectors Under the FDCPA

The defendants also maintain that they are not "debt collectors" as defined by the Act. (ECF No. 5 at 11-13.) Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions" by debt collectors. *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). Under the Act, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The same provision exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by

---

[5] The plaintiff asserts that Navient "assumed certain liabilities related to the servicing and collection activities of . . . Navient, LLC, and their subsidiaries" after a corporate reorganization in 2014. (ECF No. 9 ¶ 11.) But NSL is not the "holding/parent company" of Navient, as the plaintiff alleges. (ECF No. 9 ¶ 12.) On the contrary, Navient is the parent company of NSL. (ECF No. 5 at 8.)

such person [or] concerns a debt which was not in default at the time it was obtained by such person." *Id.* The Second Circuit has held that creditors seeking to collect their own debts and loan servicers who obtain a debt prior to default are not debt collectors under the FDCPA. *See, e.g.*, *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (finding that the FDCPA does not apply to entities seeking to collect their own debts); *see also Vallecastro v. Tobin, Melien & Marohn*, No. 3:13-CV-1441, 2014 WL 7185513, at *3 (D. Conn. Dec. 16, 2014) ("When a loan servicer obtains an account prior to its default, that loan servicer operates as a creditor, not a debt collector, for the purposes of the FDCPA."). Even accepting the plaintiff's factual allegations as true, she has not pleaded sufficient facts to establish that the defendants are debt collectors under the FDCPA.

      The plaintiff alleges in conclusory terms that NSL is a debt collector because it "regularly attempts to collect third-party debts" and has engaged in "debt collection activities related to outstanding and delinquent student loans on behalf of several owners of federal student loans." (ECF No. 9 ¶¶ 9, 20.)[6] At the same time, she also acknowledges that NSL is "the largest student loan servicer in the United States." (*Id.* at ¶ 2.) "A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status." *Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019) (summary order). "Therefore, a complaint that 'does not allege that a servicer acquired the plaintiff's debt after it was in default . . . fails to plausibly allege that the servicer qualifies as a debt collector under FDCPA.'" *Id.* (quoting *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014)) (alterations omitted). The plaintiff does not plead any facts that establish that NSL

---

[6] In her opposition, the plaintiff refers to Navient Solutions as "Navient." For the purposes of this Order, "NSL" refers to Navient Solutions, whereas "Navient" refers to Navient Corporation.

7

acquired the loan after it went into default. *See Allen*, 2018 WL 4680023, at *4-5 (finding that NSL was not a debt collector under the FDCPA when it began servicing the plaintiff's loans prior to default); *Downridge v. Navient*, No. 16-CV-10327, 2016 WL 1594427, at *3 (E.D. Mich. Apr. 21, 2016) (finding that NSL was not a debt collector under the FDCPA because the plaintiff failed to provide sufficient factual allegations to show that the "[d]efendant acquired [p]laintiff's debt after default or was servicing for another entity that possessed the debt"). The plaintiff also fails to allege specific facts to show that Navient Corporation—the parent company of NSL—is a debt collector under the FDCPA, and makes only a conclusory statement that Navient "[has] been engaged in debt collection practices." (ECF No. 9 ¶ 1.) Because the plaintiff has not pleaded sufficient factual allegations to classify the defendants as debt collectors within the meaning of the FDCPA, this claim is dismissed.

### C. The Plaintiff Fails to State a Claim Under the FDCPA

Even assuming the defendants are debt collectors for the purposes of the FDCPA, the plaintiff's FDCPA claim must still be dismissed. The plaintiff alleges that the defendants engaged in unlawful collection practices in violation of the FDCPA by harassing and intimidating her, intending to coerce her into repaying a student loan that was not her responsibility. (Compl. ¶ 3.)[7] The plaintiff appears to allege a violation of 15 U.S.C. § 1692d, which provides that "[a] debt collector may not engage in any conduct the natural consequence

---

[7] In particular, the complaint alleges violations of section "805(b)(2)" of the FDCPA. (ECF No. 1 at 6.) Section 805(b)(2) of the FDCPA is codified at 15 U.S.C. § 1692c, but there is no § 1692c(b)(2). If the plaintiff intends to allege a violation of 15 U.S.C. § 1692c(b), regarding communication with third parties, she fails to state a claim pursuant to Rule 8(a)(2) because she does not allege any facts that support a violation. A plaintiff alleging a violation of § 1692c(b) must show that the defendants conveyed information about a debt to a third party, although she does not need to show that the defendants did so knowingly or intentionally. *See Marisco v. NCO Fin. Sys. Inc.*, 946 F. Supp. 2d 287, 291-93 (E.D.N.Y. 2013). The plaintiff also mentions 15 U.S.C. § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." (ECF No. 9 ¶ 27.) But she does not allege any facts that support such a violation, nor does she specify which of the defendants' actions are false, deceptive, or misleading.

8

of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

Section 1692d provides nonexclusive examples, including "[t]he use or threat of use of violence or other criminal means," "[t]he use of obscene or profane language" and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *See id*. The plaintiff claims that the defendants communicated with her through mail and telephone calls, even after she told them that she was the victim of identity theft, (Compl. ¶ 4), but she but she does not specify how the communications were harassing, oppressive or abusive. *See Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 472 n.60 (S.D.N.Y. 2013) (dismissing *pro se* plaintiffs' FDCPA claim because their assertions that they "received harassing calls at home and work" as well as "various mailings" were conclusory and failed to plead a plausible FDCPA violation).

To state a claim under § 1692d(5)—which includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously . . . ." as an example of harassing conduct—the plaintiff need only plead enough facts to show that it is plausible that the defendants called her repeatedly, causing her telephone to ring repeatedly or continuously with the intent to annoy, abuse or harass her. *See Sussman v. I.C. Sys. Inc.*, 928 F. Supp. 2d 784, 794 (S.D.N.Y. 2013) (denying motion to dismiss where plaintiff alleged that defendants called 50 times in three months and continued to call after plaintiff instructed defendants to stop harassing him). The plaintiff alleges that the defendants called her at least 50 times between 2017 and 2019—a span of approximately two years (ECF No. 9 ¶ 26); the plaintiff does not say whether the defendants kept calling her after she sent a cease and desist letter. *Cf. Doyle v. Midland Credit Mgmt. Inc.*, No. 11-CV-5571, 2012 WL 1666397, at *4 (E.D.N.Y. May 11, 2012) (denying motion to dismiss where the plaintiff alleged receiving 22 to 28 phone calls over a

9

period of several months, and the calls continued even after the plaintiff instructed the defendants to stop calling and spoke to numerous supervisors). The plaintiff therefore fails to allege sufficient facts to state a claim under 15 U.S.C. § 1692d.

## II.     The E-Sign Act and TCPA Claims

In her opposition to the defendant's motion, the plaintiff alleges violations of the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. § 7001 *et seq.* and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*—claims that she did not make in her initial complaint.[8] The defendants argue that the plaintiff cannot amend her complaint through her opposition, and that in any event, the plaintiff fails to state claims upon which relief could be granted. (ECF No. 10 at 10.)

It is well-settled that a plaintiff cannot typically "amend [her] complaint by asserting new . . . theories for the first time in opposition to [a] motion to dismiss." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting new claim because it was first raised in the plaintiff's opposition to defendant's motion to dismiss). Even a plaintiff proceeding *pro se* "may not raise 'entirely new' causes of action for the first time in his opposition papers." *Davila*, 343 F. Supp. 3d at 267 (quoting *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *5 (S.D.N.Y. 2014)). Nevertheless, a court may consider a *pro se* plaintiff's "new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'" *Id.* A liberal reading of the complaint, as

---

[8] The plaintiff also alleges violations of the Truth in Lending Act, although the relevance of the Act in this case is not readily apparent, and she does not seem to be stating a specific claim under the Act. (ECF No. 9 ¶ 13.)

10

required in light of the plaintiff's *pro se* status, suggests that the plaintiff could have asserted the TCPA and E-Sign Act claims based on the facts in the initial complaint.

### A. The E-Sign Act Claim

The plaintiff contends that the defendants violated the E-Sign Act by attempting to enforce the repayment of a loan—a loan for which she alleges she is not responsible—based on a digitally-signed promissory note containing an e-signature to which she did not consent and which she did not authorize.[9] (ECF No. 9 ¶ 31.) She further contends that the digital signature upon which the defendants rely does not establish that she co-signed the promissory note. (ECF No. 9 ¶ 27.)

The defendants respond that the Act does not support a private right of action. (ECF No. 10 at 12.) That is correct. *See, e.g.*, *Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660, 2017 WL 4322816, at *4 (E.D.N.C. Sept. 28, 2017) ("The court . . . concludes that the E-Sign Act does not create a private right or remedy"); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 707 (E.D. Pa. 2016) (same); *see also Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (noting that where congressional intent to create a private remedy cannot be inferred from the statutory language, structure, or some other source, a private remedy cannot be said to exist). Moreover, even if a private right of action did exist under the E-Sign Act, the Act itself provides that a "failure to obtain electronic consent or confirmation of consent by that consumer" is not by itself fatal to the legal effectiveness, validity, or enforceability of a contract. 15 U.S.C. § 7001(c)(3). Since amendment would be futile, the plaintiff's claim under the E-Sign Act is dismissed without leave to amend.

---

[9] The E-Sign Act was passed in order to facilitate the use of electronic contracts and signatures in interstate commerce by ensuring that such contracts and signatures cannot be denied legal effect solely because of their electronic form. *See* 15 U.S.C. § 7001(a).

11

### B. The TCPA Claim

The plaintiff alleges that the defendants violated the Telephone Consumer Protection Act through "[r]epeated unlawful debt-collection telephone calls." (ECF No. 9 at 5.) She claims that since 2017, defendant NSL utilized one or more automated dialing systems to place more than 50 unlawful debt-collection calls to her cell phone at all times of the day when she was at work, home, or church. (*Id.*) The plaintiff maintains that she never gave NSL her cellular number, nor did she consent to or authorize the phone calls. (*Id.*)

The TCPA prohibits telephone calls made "using any automatic telephone dialing system or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A).[10] The defendants contend that the plaintiff's allegation that they violated the Act is conclusory. (ECF No. 10 at 11.) According to the defendants, the plaintiff "fails to identify the telephone number at issue, who made the calls, and the relevant timeframe of these calls . . . [and she] provides no factual support to suggest that Defendants called her using an 'automatic telephone dialing system.'" (*Id.*)[11]

Without the benefit of discovery, plaintiffs face significant challenges in pleading facts about a defendant's use of an automatic telephone dialing system ("ATDS"). *See, e.g.*, *Duguid*

---

[10] The defendants point out that the Act provides an exception for calls "made with the prior express consent of the called party." (ECF No. 10 at 6.) However, the defendants' contention that the plaintiff "pleads nothing to suggest that she did not consent to any telephone calls, or how and when she revoked any consent" misconstrues the burden of proof. (*Id.* at 11.) Under the TCPA, "prior express consent" is an affirmative defense for which the defendant bears the burden of proof. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act. of 1991*, 23 F.C.C Rcd. 559, 565 (2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.").

[11] An "automatic telephone dialing system" includes "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012)).

*v. Facebook, Inc.*, No. 15-CV-00985, 2016 WL 1169365, at *4 (N.D. Cal. Mar. 24, 2016) (collecting cases). Accordingly, violations of the TCPA "need not be pled with particularity." *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014). However, a "bare allegation that defendants used an ATDS is not enough." *Shcherb v. Angi Homeservices Inc.*, No. 19-CV-367, 2019 WL 5538030, at *1 (S.D.N.Y. Oct. 25, 2019) (internal quotations omitted). Although the plaintiff need not plead "specific technical details" of a defendant's alleged ATDS, she "must at least describe, in laymen's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS." *Baranski v. NCO Fin. Sys., Inc.,* No. 13-CV-6349, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014) (citing *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)). Those facts may include, for example, "the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, [or] the generic content of the message he received." *Johansen*, 2012 WL 6590551, at *3.

The plaintiff has to do more than simply recite the statutory language. Neither her complaint nor opposition papers contain sufficient factual allegations about the circumstances of the calls to permit a reasonable inference that the calls were made from an ATDS. The plaintiff does not say when the calls occurred, describe their content, specify the number from which the calls originated, or state whether the messages sounded prerecorded. *See Jennings v. Cont'l Serv. Grp., Inc.*, 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017). Accordingly, the plaintiff's TCPA claim as pleaded must be dismissed.

**III.     Leave to Amend**

A court must grant leave to amend where a liberal reading of a *pro se* plaintiff's complaint "gives any indication that a valid claim might be stated." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *but see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (noting that a court may deny leave to amend "in instances of futility"). Since an amended complaint may support valid claims under the FDCPA and TCPA, granting the plaintiff leave to amend these claims would not be futile.  In light of her *pro se* status, the plaintiff is given thirty days leave to file an amended complaint.

In order to comply with Federal Rule of Civil Procedure 8(a), the amended complaint must include specific factual allegations against each defendant to support her claims, *see Twombly*, 550 U.S. at 556, as well as facts to support her claims that the defendants were debt collectors as defined by the FDCPA, that the defendants' communications with the plaintiff were "harassing, oppressive or abusive," and that the defendants communicated using an ATDS.  The plaintiff should also attach copies of all documents upon which she relies in her pleadings to her amended complaint.

## CONCLUSION

I grant the defendants' motion to dismiss.  The plaintiff's E-Sign Act claim is dismissed without leave to amend, as any amendment would be futile.  The plaintiff may amend her complaint with respect to her FDCPA and TCPA claims and should do so within thirty days of the date of this order.  The plaintiff is encouraged to contact the Federal Pro Se Legal Assistance Project for assistance in filing her amended complaint.  If the plaintiff does not amend the complaint within thirty days, judgment dismissing this action will enter.

**SO ORDERED.**

 s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      July 13, 2020